IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEANNE NOTTINGHAM,

                Plaintiff,

v.                                                         CIVIL ACTION NO. 2:16-cv-03022

UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the United States' Motion for Summary Judgment.[1] (ECF No. 32.) For the reasons provided below, the Court **GRANTS** the motion.

*I. BACKGROUND*

Plaintiff Jeanne Nottingham brings this medical malpractice action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80.[2] Plaintiff alleges that the United States, acting through its employees Primary Care Systems, Inc. ("Primary Care"), Sarah B. Chouinard ("Dr. Chouinard"), and/or Kimberly Ann Bird ("Ms. Bird"), was negligent in its failure to obtain follow-up studies of an abnormal mammogram for a period of almost eighteen months. (*See* ECF No. 1 at 4–5 ¶¶ 15–17, 22–27.) According to the Complaint, Plaintiff had a mammogram on February

---

[1] The Court notes that also pending is a motion by Edward G. Atkins to withdraw as Plaintiff's counsel and amend the current scheduling order. (ECF No. 37.) Because the current memorandum opinion and order disposes of this case, the Motion to Withdraw as Counsel is **DENIED AS MOOT**.

[2] Plaintiff characterizes the Complaint as one of common law negligence and never mentions the FTCA. (*See* ECF No. 1.) However, she claims that this Court's jurisdiction is proper under 28 U.S.C. § 1346(b), (*id.* at 2 ¶ 7), which is the statute providing this Court with exclusive jurisdiction over claims brought under the FTCA. *See, e.g.*, *Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016). Further, Plaintiff "adopts the statement of the case as set forth in [the United States'] memorandum" in support of the summary judgment motion, which categorizes this case as one filed pursuant to the FTCA. (*See* ECF No. 33 at 1; ECF No. 35 at 1.)

1

12, 2010, "which was later found to be highly abnormal." (*Id.* at 4 ¶ 15.) She alleges that "no follow-up studies were obtained until August 4, 2011, despite the Plaintiff being treated by employees of the Defendants [sic] at Clay Primary Care, on multiple occasions." (*Id.* ¶ 16.) The Complaint states that Plaintiff was diagnosed with right breast cancer on August 21, 2011, and underwent a right mastectomy five days later. (*Id.* ¶ 17.) Plaintiff further claims that the cancer spread to her left breast and lymph nodes, leading to a left mastectomy on October 5, 2011. (*Id.* ¶ 18.) She avers that because of the "missed diagnosis," she underwent chemotherapy and radiation treatments and is "permanently disfigured." (*Id.* ¶ 19.)

Plaintiff filed her Complaint on March 30, 2016, asserting negligence as the cause of action. (*Id.* at 4–5 ¶¶ 21–27.) She seeks compensation for "medical treatment, past and future, out of pocket expenses, past and future, and other expenses" yet to be determined as well as punitive damages, pre- and post-judgment interest and costs, and any further relief deemed proper by this Court. (*Id.* at 5–6 ¶ 26.) The United States filed the Motion for Summary Judgment and memorandum in support of its motion on April 24, 2017, and supplemented it with exhibits the next day. (ECF Nos. 32, 33, 34.) Plaintiff responded to the motion on May 5, 2017, (ECF No. 35), and the United States filed a reply memorandum on May 12, 2017, (ECF No. 36). The motion is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If factual issues exist that properly can be resolved only by a trier of fact because they may reasonably be determined in favor of either party, summary judgment is inappropriate.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Id.*

When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the nonmoving party. *Mellen v. Brunting*, 327 F.3d 355, 363 (4th Cir. 2003). "[T]he issue of material fact required by Rule 56[a] to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The nonmoving party may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of his position. *Id.* at 252.

## III. DISCUSSION

The United States moves for summary judgment, arguing that Plaintiff has not met her burden of proof because she failed to provide proper expert testimony in support of her claim. (*See* ECF No. 33 at 7–8.) The motion avers that Plaintiff cannot establish proximate cause as her disclosed expert witness, Dr. Blanche Borzell, does not provide any opinion "that an injury occurred as a result of the alleged negligence." (*See id.* at 9.) With regard to the almost eighteen-month delay in follow-up studies after Plaintiff's first abnormal mammogram, (*see* ECF No. 1 at 4 ¶¶ 15–16), the United States argues that "[P]laintiff has offered no expert opinion as to the

practical and cognizable effect of the delay, save that the cancer was diagnosed at a later disease stage." (ECF No. 33 at 9–10 ("Dr. Borzell did not provide any opinion on treatment . . . [and] did not opine that Ms. Nottingham has a shorter life expectancy due to the delay in diagnosis.")).) Further, the United States asserts that the expert is not qualified to provide a causation opinion and does not offer testimony as to recoverable damages. (*See id.* at 10–11 (noting that Dr. Borzell, a family medicine physician in private practice, has never practiced in the field of oncology).)

Plaintiff focuses her response to the motion on the issue of when she was notified of the abnormal results of her February 12, 2010, mammogram. (*See* ECF No. 35 at 1–4.) Plaintiff claims that she never received information or communication regarding the results of that first mammogram and that "had she known . . . she would have taken immediate action . . . ." (*See id.* at 2, 4.) Thus, she claims that whether she was informed of the mammogram's results presents a question of fact for the fact finder. Plaintiff also states that Dr. Borzell "should be allowed to testify as to whether the delay in diagnosis resulted in any harm" to her because, contrary to the United States' position, the certificate of merit included with her Rule 26 disclosure was sufficient. (*See id.* at 4.) Finally, Plaintiff for the first time raises the issue of "emotional trauma . . . upon being informed of the delayed diagnosis."[3] (*See id.*)

The reply filed by the United States reiterates Plaintiff's burden of proof in a negligence action and the general principle that expert testimony must support a medical malpractice claim. (*See* ECF No. 36 at 1.) The United States takes issue with Plaintiff's response in that it "shift[s] her claim to allege that the breach of the standard of care was a failure to notify" as opposed to a "fail[ure] to provide timely follow-up" of her mammogram films as noted in Dr. Borzell's report. (*See id.* at 2.) Citing Dr. Borzell's single-sentence statement regarding the effect of Primary Care's

---

[3] The Court notes that the Complaint does not make any allegations regarding non-physical injuries. (*See* ECF No. 1.)

alleged failure to follow-up, the United States argues the following: "The failure of Ms. Nottingham to present adequate expert testimony on the issue of proximate cause results in failure of her claim. Plaintiff has not met her burden and cannot sustain a cause of action pursuant to the MPLA. Therefore, defendant is entitled to summary judgment." (*Id.* at 4–5 (noting the requirements of Federal Rule of Civil Procedure 26(a)(2) and Dr. Borzell's inability to later expand her testimony to opinions outside of the provided report).) The United States avers that in addition to failing to prove a breach in the standard of care and proximate cause, Plaintiff has failed to prove damages. (*Id.* at 5.) The reply concludes, "Plaintiff has not provided a scintilla of evidence supporting that any care or treatment received . . . would have been unnecessary or different" given an earlier diagnosis. (*Id.*)

The United States is immune from suit unless it consents to be sued. *See, e.g.*, *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990), *cert. denied*, 498 U.S. 1025 (1991). The FTCA creates a limited waiver of sovereign immunity "subject to the prerequisite that the tort claim first be submitted to the appropriate federal agency within two years of accrual of the cause of action and that there be a final denial of the claim by the reviewing agency." *Bellomy v. United States*, 888 F. Supp. 760, 763 (S.D. W.Va. 1995) (citations omitted) (citing 28 U.S.C. §§ 2401(b), 2675). The United States does not appear to dispute here that Plaintiff met the jurisdictional requirements by timely filing an administrative tort claim with the appropriate federal agency, the Department of Health and Human Services, which was denied. (*See* ECF No. 1 at 2–3 ¶¶ 8, 10–12; ECF No. 7 at 2–3 ¶¶ 8, 10, 12.)

The FTCA renders the United States liable for the negligent acts of its employees committed "while acting within the scope of his office or employment, under circumstances where

5

the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The United States provides in its answer to the Complaint that Primary Care is a deemed employee of the United States and covered under the FTCA. (ECF No. 7 at 2 ¶ 4.) Further, at all times relevant to this action, Dr. Chouinard and Ms. Bird were employees of Primary Care and the United States for purposes of the FTCA. (*Id.* ¶ 5.)

Under the FTCA, the law of the state where the alleged negligence occurred provides the substantive law of the case. *See* 28 U.S.C. § 1346(b)(1). Here, the alleged negligence occurred in West Virginia, so West Virginia's Medical Professional Liability Act ("MPLA") applies. *See, e.g.*, *Osborne v. United States*, 166 F. Supp. 2d 479, 496 (S.D. W.Va. 2001); *Bellomy*, 888 F. Supp. at 764; *see also Drennen v. United States*, 375 F. App'x 299, 303–04 (4th Cir. 2010) (per curiam). The MPLA sets forth the elements of a medical negligence claim as follows:

> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3(a)(1)–(2). Thus, to prevail on a claim under the MPLA, "the burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of the injury." *Sexton v. Grieco*, 613 S.E.2d 81, 83 (W. Va. 2005) (per curiam) (quoting Syl. Pt. 2, *Walton v. Given*, 215 S.E.2d 647 (W. Va. 1975)). The Supreme Court of Appeals of West Virginia has defined "proximate cause" as "that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." *Mays v. Chang*, 579 S.E.2d 561, 565 (W. Va. 2003) (quoting Syl. Pt. 3, *Webb v. Sessler*, 63 S.E.2d 65 (W. Va. 1950)) (noting also that a plaintiff

must show that the defendant's breach "was *a* proximate cause of the plaintiff's injury, not the *sole* proximate cause" (emphasis in original)).

In West Virginia, the standard of medical care is a national one. *See* Syl. Pt. 1, *Paintiff v. City of Parkersburg*, 345 S.E.2d 564 (W. Va. 1986). That standard imposes a duty on a physician to render reasonable and ordinary care in the diagnosis and treatment of a patient. *See* Syl. Pt. 3, *Utter v. United Hosp. Ctr., Inc.*, 236 S.E.2d 213 (W. Va. 1977). A deviation from this duty is malpractice when it proximately causes the plaintiff's injury. *See Mays*, 579 S.E.2d at 565. "The applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court."[4] W. Va. Code 55-7B-7(a); *see also Banfi v. Am. Hosp. for Rehab.*, 529 S.E.2d 600, 608 (W. Va. 2000) ("[W]hether a defendant has properly diagnosed and/or treated a patient entrusted to his/her care necessitates

---

[4] The Court notes that the Supreme Court of Appeals of West Virginia has provided the following exception to the general rule:

> In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's prima facie showing of negligence.

*Banfi v. Am. Hosp. for Rehab.*, 529 S.E.2d 600, 605–06 (W. Va. 2000) (quoting Syl. Pt. 4, *Totten v. Adongay*, 337 S.E.2d 2 (W. Va. 1985)). The parties do not assert the exception's application to the facts of this case, and the Court does not find that it applies. Plaintiff brought claims regarding "the failure of the Defendants [sic] to provide timely follow-up of the Plaintiff's abnormal breast films, [which] . . . allowed her breast cancer to continue to grow unabated . . . [and] resulted in diagnosis of the cancer at a later stage of the disease . . . ." (ECF No. 1 at 4 ¶ 20.) The facts of this case do not present a situation "where lack of care or want of skill is so gross, so as to be apparent," *see Banfi*, 529 S.E.2d at 605–06, despite Plaintiff's allegation in the Complaint that the employees' actions and omissions "rise to the level of reckless and wanton disregard of the care and duty owed to the Plaintiff." (*See* ECF No. 1 at 5 ¶ 27.) Further, establishing the degree to which Primary Care or its employees' actions played a role in Plaintiff's injury here, if at all, necessarily involves complex medical matters not understood through lay jurors' "common knowledge and experience." *See Banfi*, 529 S.E.2d at 605–06 (citing *Murphy v. Schwartz*, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986) (instructing that the "common knowledge" exception operates when "the medical negligence is as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence" (internal citations omitted))). Therefore, the general rule requiring Plaintiff to provide expert testimony in establishing a breach of the requisite standard of care and proximate cause applies to this action.

expert testimony because such a question is outside the common knowledge of the typical jury."); Syl. Pt. 5, *McGraw v. St. Joseph's Hosp.*, 488 S.E.2d 389 (W. Va. 1997) ("It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses."). A physician's testimony as to the causal relationship between the plaintiff's injury and the defendant's negligent act only needs to be stated in terms of reasonable probability as opposed to reasonable certainty. *See* W. Va. Code § 55-7B-7(a)(2); Syl., *Serbin v. Newman*, 198 S.E.2d 140 (W. Va. 1973). If a plaintiff proceeds on a "loss of chance" theory that the breach of the standard of care deprived him of a chance of recovery or increased the risk of harm to him, which was a substantial factor in the ultimate injury, the plaintiff "must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery . . . ." W. Va. Code § 55-7B-3(b).

In disclosing expert testimony during discovery, parties are bound by the requirements of Federal Rule of Civil Procedure 26(a)(2). This procedural rule "provides that, unless a court orders otherwise, when 'the witness is one retained or specially employed to provide expert testimony in the case . . . ,' such disclosures 'must be accompanied by a written report' setting forth the relevant details of the witness's testimony." *Drennen*, 375 F. App'x at 306 (quoting Fed. R. Civ. Pro. 26(a)(2)) (noting that treating physicians are "exempt from Rule 26's written report requirement because treating physicians are not 'retained or specially employed to provide expert testimony'"). The written report must contain, among other requirements, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. Pro. 26(a)(2)(B); *see also* W. Va. Code § 55-7B-6

(promulgating certain pre-filing requirements before suing a health care provider, such as providing a screening certificate of merit executed under oath by a health care provider qualified as an expert that states, among other things, "[t]he expert's familiarity with the applicable standard of care in issue," "the expert's opinion as to how the applicable standard of care was breached," and "the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death"). Such disclosures must be supplemented when required under Rule 26(e). Fed. R. Civ. Pro. 26(a)(2)(E); *see also* Fed. R. Civ. Pro. 26(e) (requiring supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect")

Plaintiff here shares a lengthy history with Primary Care and its employees. The record demonstrates that Plaintiff visited Primary Care no fewer than eleven times between January 25, 2010, and August 3, 2011.[5] (*See* ECF No. 34 at 3–5, 11–13, 20–21, 23–26, 33, 39–40, 44–45, 47–49, 52–54.) The current dispute begins shortly after Plaintiff's visit to Primary Care on January 25, 2010. (*See* ECF No. 1 at 4 ¶ 15.) Following that visit, where Plaintiff indicated that "[h]er last pap [test] and mammogram were many years ago," Ms. Bird, the treating nurse practitioner, noted in Plaintiff's chart that a mammogram would follow. (ECF No. 34 at 3, 5.) Indeed, Plaintiff reported to Charleston Area Medical Center ("CAMC") on February 12, 2010, for a screening mammogram. (*Id.* at 6–7.) The chart produced by CAMC clearly records the detection of an irregularity in Plaintiff's right breast. (*See id.* at 6.) The chart indicates that additional mammographic views or an ultrasound was needed within twenty-eight days. (*Id.* at 7.) Consequently, on February 22, 2010, Ms. Bird ordered, with Dr. Chouinard's signed approval, additional mammographic views and an ultrasound. (*Id.* at 2.) Plaintiff's medical records,

---

[5] The following facts are deduced from the medical records put into evidence by the United States. The Court notes that the records provided do not represent Plaintiff's complete medical history with Primary Care. Despite the incompleteness of the records, there is no dispute of material fact that would require the Court to examine her medical record in its entirety to resolve this case.

supported by the deposition of Brenda G. Wilcox,[6] indicate that Plaintiff had a follow-up appointment scheduled for February 25, 2010, at 9:30 a.m. before it was moved to March 5, 2010, at 11:00 a.m. (*See id.* at 63 (including a handwritten note by Ms. Wilcox stating that Plaintiff called to reschedule the February 25 appointment due to a fall and "broken leg").) Ms. Wilcox testified that Plaintiff did not attend the appointment scheduled for March 5, 2010. (*Id.* at 61.)

Additional visits to Primary Care did not promptly result in the follow-up mammographic views and ultrasound ordered in February 2010. During a visit to Primary Care on September 20, 2010, Plaintiff complained of a cough and sinus pressure. (*See id.* at 24.) After examination, Dr. Yusuf Khan noted the following in Plaintiff's chart: "Patient with recurrent right breast nodule involving nipple. Patient states that she had a negative mammogram 6 months prior. Patient strongly advised close follow-up regarding breast nodule. Patient has voiced understanding, and is agreeable." (*Id.* at 23; *see also id.* at 24–25.) Three days later, Plaintiff returned to Primary Care "complaining of a nodule on her right breast" and requested its removal. (*Id.* at 25.) Ms. Bird noted in Plaintiff's chart that Plaintiff was "awaiting referral to [a] surgeon for [the] breast nodule." (*Id.* at 26.) Despite the referral faxed to a surgeon, Dr. Bali, on September 27, 2010, Dr. Bali's office notified Primary Care on November 17, 2010, that it had been "unable to contact p[atien]t for scheduling."[7] (*Id.* at 27.) Primary care noted in Plaintiff's chart that it "[n]otified p[atien]t by mail to call Dr. Bali['s] office for scheduling surgery." (*Id.*)

Plaintiff visited Primary Care again on December 9, 2010, for a "well-woman exam." (*See id.* at 29–33.) In the pre-examination paperwork, Plaintiff checked "no" to the question "[h]ave you ever had any abnormal mammograms?" (*Id.* at 30.) However, in the progress notes placed in

---

[6] The Court notes that Ms. Wilcox's role in this matter is not clear, but she appears to be an employee at the CAMC Imaging Center. (*See* ECF No. 34 at 63.)
[7] Plaintiff testified that she does not remember being referred to Dr. Bali and that she was never contacted by Dr. Bali's office. (ECF No. 35-1 at 9.)

Plaintiff's file at that visit, Primary Care employee Janice Walker indicated Plaintiff's bilateral mammogram at CAMC performed earlier that year with the comment "abnormal/suppose[d] to repeat." (*Id.* at 33; *see also id.* at 37 (scheduling additional mammographic views and ultrasound for January 2011, and noting that the information was mailed to Plaintiff).) Primary Care supplemented Plaintiff's medical file on December 21, 2010, with a note that it left messages on Plaintiff's home and cell phones and mailed her an order for a follow-up mammogram.[8] (*See id.* at 36, 38 ("P[atien]t has a history of not returning calls.").) Primary Care added a new comment to Plaintiff's medical file on December 22, 2010, that Dr. Bali's office was still unable to contact patient regarding surgery. (*See id.* at 27.)

Plaintiff had yet to undergo the necessary follow-up appointment or schedule her requested surgery well over a year after her abnormal mammogram. Her medical record indicates a visit to Primary Care on May 18, 2011, for continuing left knee pain and an earache. (*See id.* at 44.) At that visit, Ms. Bird wrote that Plaintiff was "[a]gain instructed [ ] to have [a] mammogram," but noted that Plaintiff claimed to be unaware of the abnormal mammogram results from 2010. (*Id.* at 45.) Plaintiff visited Primary Care again on July 21, 2011, and was "[i]nstructed [ ] to discuss her orders for her mammogram." (*Id.* at 47.) Plaintiff notified Primary Care on August 1, 2011, that she "did not have breast ultrasound completed as scheduled" because she was unaware of the appointment that Primary Care supposedly set. (*See id.* at 50; *see also id.* at 52 ("Did not get paper work to have breast ultrasounds done as she states her daughter had been living there and she may have thrown them away.").) Finally, when Plaintiff again visited Primary Care on August 3, 2011, to discuss her referral to a Dr. Bowman for "pain management," Primary Care scheduled her an

---

[8] The Court acknowledges Plaintiff's numerous denials in her deposition regarding whether she received any telephone calls, messages, or letters about any medical appointments or results. (*See generally* ECF No. 35-1.)

11

appointment the following day for further breast imaging at CAMC and notified Plaintiff while she was in the office. (*See id.* at 52–53.)

Notwithstanding Plaintiff's numerous visits to Primary Care and the attempted contacts to schedule Plaintiff for follow-up breast imaging, her diagnostic mammogram did not occur until August 4, 2011. (*See id.* at 55.) The diagnostic mammogram revealed a mass in Plaintiff's right breast that was described as "suspicious for malignancy," and the doctor recommended a biopsy for further evaluation. (*Id.* at 55–57.) Her biopsy scheduled for August 9, 2011, resulted in a right breast cancer diagnosis and right mastectomy. (*Id.* at 62; ECF No. 33 at 4; ECF No. 35 at 1.) Despite the Complaint's allegation that the cancer spread to Plaintiff's left breast and that she underwent a left mastectomy on October 5, 2011, (ECF No. 1 at 4 ¶ 18), Plaintiff's response to the current motion agrees with the United States' statement that her left mastectomy, occurring in January 2012, was prophylactic in nature. (ECF No. 33 at 4; ECF No. 35 at 2.)

Plaintiff has failed to meet her burden of proof that the United States, by the actions of its employees, breached its standard of care in providing medical treatment to her and that the alleged breach proximately caused her injury. First, Plaintiff does not provide an expert's detailed opinion as to either of these elements of malpractice, which the Court requires under the MPLA. *See* W. Va. Code 55-7B-7(a); *see also Bellomy*, 888 F. Supp. 764–65; *Banfi*, 529 S.E.2d at 608. In her Rule 26(a)(2) disclosure to the United States, Plaintiff simply discloses her proffered expert's certificate of merit required under W. Va. Code § 55-7B-6. That one-page certificate of merit by Dr. Borzell first provides the various records and materials reviewed. (*See* ECF No. 34 at 1.) Dr. Borzell then summarizes the relevant events in four sentences. (*See id.*) Finally, the entirety of Dr. Borzell's opinion is contained in the following paragraph:

> It is my opinion, based upon a reasonable degree of medical certainty, that Kimberly Ann Bird, M.S.N., FNP-BC, breached the applicable standard of care by

> failing to provide timely follow-up of Ms. Nottingham's abnormal breast films. This delay in diagnosis allowed her breast cancer to continue to grow unabated, and resulted in diagnosis at a later stage of the disease.

(*Id.*) This "opinion," which only refers to the actions of Ms. Bird, does not comply with the written report requirements of Federal Rule of Civil Procedure 26, which apply in this case because Dr. Borzell was "retained or specially employed to provide expert testimony." *See* Fed. R. Civ. Pro. 26(a)(2)(B). Dr. Borzell's statement, even after supplementation in February 2017, (*see* ECF No. 34 at 72, 75), is deficient in the following ways: it is void of any details of the basis and reasons for her opinion; it does not provide the facts or data she relied on; and it does not contain any exhibits or other supporting documents. *See* Fed. R. Civ. Pro. 26(a)(2)(B)(i)–(iii). (*See also* ECF No. 34 at 1.) Due to these insufficiencies, the Court does not find that Dr. Borzell's certificate of merit is evidence properly establishing the elements of breach and proximate cause.[9]

Even if the initial disclosure was proper under Rule 26(a)(2), Plaintiff had a duty to supplement the disclosure after the United States notified her of its incompleteness. *See* Fed. R. Civ. Pro. 26(e). Once informed by the Assistant United States Attorney ("AUSA") representing the United States in this case that the initial disclosure was void of the proffered expert's written report, curriculum vitae ("CV"), and fee schedule required under Rule 26(a)(2)(B), Plaintiff's counsel emailed to the United States Dr. Borzell's CV and fee schedule. (*See* ECF No. 34 at 70–72.) However, Plaintiff's counsel wrote that at the time of the supplementation, "the only written report from [Dr. Borzell] is the certificate of merit." (*Id.* at 72; *see also id.* at 75 (providing a

---

[9] The United States also argues that Dr. Borzell is unqualified to provide a causation opinion in this case, (*see* ECF No. 33 at 10–11), but the Court does not address this argument as Dr. Borzell's opinion is insufficient regardless of her qualifications.
    Further, the Court notes that Plaintiff never suggests she is proceeding on a "loss of chance" theory that the actions of the United States' employees caused her to lose a chance for a better result. However, even if it applied to these facts, Plaintiff has not met the burden of proof under that theory because Dr. Borzell offers no opinion that "following the accepted standard of care would have resulted in a greater than twenty-five percent chance that [Plaintiff] would have had an improved recovery . . . ." *See* W. Va. Code § 55-7B-3(b).

February 17, 2017, email from Plaintiff's counsel to the AUSA that states, "[a]s I mentioned before the only report we have is the certificate of merit and the other materials that were provided in our discovery responses").) Plaintiff failed to supplement Dr. Borzell's certificate of merit with any written report, and the certificate of merit is not an adequate substitute as it is patently devoid of any details of the alleged breach with regard to Plaintiff's treatment and how this supposed maltreatment caused Plaintiff's injury. *Cf. Bellomy*, 888 F. Supp. at 767. Neither Plaintiff nor her proffered expert provides any opinion or evidence as to how the actions of the United States' employees caused the alleged injuries or that an earlier diagnosis would have prevented chemotherapy and radiation treatments, Plaintiff's mastectomies, or her "permanent and debilitating injuries." (*See* ECF No. 1 at 4–5 ¶¶ 18–20, 25–26.)

Plaintiff provides no other expert testimony or evidence that the breach and causation elements of her claim are met, and, thus, this Court agrees with the United States that Plaintiff cannot establish medical negligence under the MPLA. *See Mays*, 579 S.E.2d at 565; Syl. Pt. 2, *Banfi*, 529 S.E.2d at 600; *see also Celotex Corp.*, 477 U.S. at 322–23; *Sykes v. United States*, No. 5:13CV92, 2014 WL 2532494, at *4 (N.D. W.Va. June 5, 2014) (affirming and adopting the magistrate judge's report and recommendation and dismissing plaintiff's claims because, in part, the plaintiff "failed to produce the medical opinion of a qualified health care provider to raise a genuine issue of material fact with respect to the defendant's breach of the standard of care"). Plaintiff may not have received any communication from Primary Care or CAMC regarding the results of her February 2010 screening mammogram as she claims in her deposition,[10] but this does

---

[10] Plaintiff stated the following:

> Q. Did you ever receive anything from the first mammogram . . . ? Did you ever receive anything from the Imaging Center at CAMC?
>
> A. No.

14

not raise a factual dispute material to the claim at hand. Inasmuch as Plaintiff has failed to offer any evidence to show that Primary Care, Dr. Chouinard, or Ms. Bird deviated from the standard of care and that their conduct proximately caused her injury, as required by the MPLA, the United States is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, the United States' Motion for Summary Judgment, (ECF No. 32), is **GRANTED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 17, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

Q. No report, no follow-up paperwork, nothing?

A. No.

Q. And you didn't receive anything from the Clay Clinic either?

A. No.

(ECF No. 35-1 at 2–3.)